# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2935

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| James Merle Blue, Sr., | * | |
| | * | [PUBLISHED] |
| Defendant-Appellant. | * | |

_____

Submitted: May 16, 2001
Filed: July 18, 2001

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and BYE, Circuit Judges.

_____

PER CURIAM.

James Merle Blue, Sr. appeals his conviction and sentence for sexually abusing a twenty-one-month-old child in Indian country in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(B). For reversal, Blue argues that the evidence was insufficient to support the jury's verdict finding him guilty; that the district court erred in applying an enhancement for using force; and that the district court erred in applying an enhancement based upon the victim's presence in his "care, custody or control at the

time of the offense." We affirm in part, but vacate the sentence in part and remand for resentencing.

## I. BACKGROUND

During the afternoon and evening of December 8, 1999, Blue and several friends drank heavily at the home of Debbie and Arnold Walking Bull, who resided on the Crow Creek Sioux Indian Reservation near Fort Thompson, South Dakota. In addition to seven adults, three children were present that day. Later in the day, the mother of the youngest child (who was then twenty-one months old) awoke from her stupor and saw her child enter the bathroom. When the child did not return for several minutes, the mother went to the bathroom door and pushed it open. She saw Blue standing in front of her child. Blue's pants were unzipped, his belt was unbuckled, and his penis was exposed.

Tribal police arrested Blue on sexual abuse charges that evening. On December 10, 1999, two law enforcement officers, FBI Special Agent Ernst Weyand and Fort Thompson Police Chief Carl Free, interviewed Blue in custody. The officers advised Blue of his rights under Miranda prior to the interview. Blue initially told officers that he had been zipping his pants up after urinating when the child's mother opened the door. Blue claimed that the child had simply watched him urinate. One of the officers pointed out several inconsistencies between Blue's account and the mother's statement. Blue then confessed, admitting that he placed his penis in the child's mouth for ten seconds. Blue provided an oral confession and signed a typed statement.

A grand jury subsequently indicted Blue on the charge of sexually abusing the twenty-one-month-old child, a violation of 18 U.S.C. § 1153(a) (pertaining to crimes by Indians against minors "within the Indian country"), 18 U.S.C. § 2241(c) (engaging in a "sexual act" with a person less than twelve years of age), and 18 U.S.C. § 2246(2)(B) (defining contact between the mouth and the penis as a "sexual act"). Blue pleaded not guilty and proceeded to trial. Blue never challenged his confession in a pretrial motion to suppress and the confession was admitted at trial. Following a two-day trial, a jury convicted Blue of sexually abusing the twenty-one-month-old child. A few days after the verdict was entered, Blue moved for a judgment of acquittal. The court later denied the motion without analysis.

On June 27, 2000, a sentencing hearing was held before the district court. Blue objected to the recommended four-level enhancement for the use of force in the Presentence Investigation Report ("PSR"), contending there was no evidence to support the use of force, and to the recommended two-level enhancement for custody, care or supervisory control of the victim, arguing that no evidence was presented that the victim saw or perceived him as his grandfather and, further, the victim's mother was present at the residence during the evening and never relinquished custody of the child to him.

After rejecting these arguments, the district court determined Blue's final, adjusted offense level to be 37, with a criminal history category of I, resulting in a sentencing range of 210-262 months. Blue was sentenced to 210 months (17 years, 6 months) imprisonment and three years supervised release.

The issues presented on appeal are: (1) whether the district court erred in denying his post-trial motion for a judgment of acquittal because the government's evidence was insufficient to prove his guilt; (2) whether the district court erred in applying a four-level sentence enhancement for using force; and (3) whether the district court erred in applying a two-level enhancement based upon the victim's presence in his "care, custody or control at the time of the offense."

## II. DISCUSSION

We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. United States v. Rohwedder, 243 F.3d 423, 425 (8th Cir. 2001).

### A.

The first issue is whether the district court properly denied Blue's post-trial motion for a judgment of acquittal. Blue argues that the government never proved that he engaged in a sexual act with the child.

The government's burden in a criminal case is to prove all elements of an offense beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). In considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the government, accepting all reasonable inferences that support the jury's verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). We must uphold the verdict if there is substantial evidence that would allow any rational trier of fact to find the

essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>Glasser</u>, 315 U.S. at 80; <u>United States v. Sandifer</u>, 188 F.3d 992, 995 (8th Cir. 1999).

A close reading of the record, which includes Blue's confession in which he admitted placing his penis in the child's mouth, convinces us that the district court did not err in finding that the government's evidence was sufficient to prove Blue's guilt and in denying Blue's motion for a judgment of acquittal.  Blue claims that the confession is invalid, contending that the typewritten version does not match the oral statement he gave and that it was not a product of his own free will.  However, Blue failed to file a pretrial motion to suppress his confession.  A challenge to the admission of evidence, such as a confession, must be made *before* trial.  <u>See</u> Fed. R. Crim. P. 12(b)(3) & 12(f).  Thus he waived the right to contest the contents of the confession or the method by which it was obtained.  <u>See</u> <u>United States v. Moore</u>, 98 F.3d 347, 351 (8th Cir. 1996) (refusing to suppress statements made prior to the administration of <u>Miranda</u> warnings because the defendant did not file a timely motion to suppress).  We therefore conclude that the district court's admission of Blue's confession into evidence was not an abuse of discretion.

**B.**

The second issue before us is whether the district court erred in applying a four-level sentence enhancement pursuant to U.S.S.G. § 2A3.1(b)(1) for using force contemporaneous with the sexual abuse.  Section 2A3.1(b)(1) of the Sentencing Guidelines provides: "If the offense was committed by the means set forth in 18 U.S.C.

§ 2241(a) or (b), increase by **4** levels." 18 U.S.C. § 2241(a) concerns aggravated sexual abuse by force or threat.

On appeal, Blue challenges the district court's decision to apply the enhancement. The district court provided the following statement of reasons for imposing the increase under U.S.S.G. § 2A3.1(b)(1):

> There's no question in the Court's mind but what that statement [Blue's confession], admitted, as it was, on proper foundation, was a large factor in the return by the jury of the verdict of guilty. The victim in this case was 21 months old. There was a relationship between the victim and the defendant. The defendant was the only one present in the bathroom at that time. The Court believes that there was sufficient force to overcome the will of this victim, albeit there was no physical injury as such. The matter of use of force under the guidelines is one to be applied liberally to the end that the guidelines will represent the amount and character of the facts of each case.

> Therefore, the Court will apply the four-level enhancement for the use of force under the guidelines.

See Sentencing Tr. at 18.

Upon review, we disagree. The evidence shows that Blue placed his penis in the young child's mouth. Blue is five feet, eight inches tall, and he weighs 170 pounds. However, no evidence exists of the use of physical force or of threats by Blue to the child. U.S.S.G. § 2A3.1, Application Note 1 provides, in relevant part:

> "The means set forth in 18 U.S.C. § 2241(a) or (b)" are: by using force against the victim; by threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnaping; by

rendering the victim unconscious; or by administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to appraise or control conduct. This provision would apply, for example, if any dangerous weapon was used or brandished.

In United States v. Crow, 148 F.3d 1048, 1050 (8th Cir. 1998), the Eighth Circuit reversed a district court's use-of-force enhancement because:

[T]he only evidence in the record arguably connoting use of force at the time of the offense was the victim's testimony that Crow removed her clothes although she did not want him to, and sexually assaulted her, hurting her. However, the record is devoid of any evidence regarding Crow's size in relation to the victim's, the victim's (perceived) ability to escape the sexual attack, or what exactly the victim meant when she stated Crow "hurt" her--i.e., whether Crow hurt her to compel her to submit to the sexual contact, or whether the contact itself hurt her.

Crow cited examples of "force" from earlier cases. Each example included proof of difference in size between the defendant and the victim *as well as* the defendant's threatening physical or verbal behavior. Id. at 1050-51.

The record shows an absence of evidence that Blue threatened the child in a physical or verbal manner. Indeed, the only factor suggesting use of force in this case is the size difference between Blue and the child. But size difference alone cannot establish use of force under section 2A3.1(b)(1). Cf. United States v. Bordeaux, 997 F.2d 419, 421 (8th Cir. 1993) (determining that force was sufficient to sustain the four-level enhancement based on disparity in size and victim's statements that defendant threatened to tell victim's mother of "dirty book" found by child if victim told her mother about sexual assaults); United States v. Fire Thunder, 908 F.2d 272, 274-75 (8th Cir. 1990) (concluding that force requirement *not met* merely because defendant was adult and stepfather to child victim).

The guideline contemplates some evidence of the use of force as an affirmative matter. Here all we have is status evidence, i.e., a large adult and a small child. That evidence does not support application of the guideline calling for a heavily increased sentence.

## C.

Blue also asserts that the district court erred at sentencing in assessing a two-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(3)(A) because the victim was in the "custody, care, or supervisory control of the defendant." While the defendant conceded in post-arrest statements to the FBI that the victim and his mother did live with the defendant for a six-month period a year prior to the incident and he regarded the victim as his grandson, he challenges, as a legal matter, whether he had custody or care of the victim, even temporarily, while the mother and several other individuals were present in the home during the incident, and whether an actual relationship existed in which the victim was taught to trust the defendant.

The district court provided the following statement of reasons for imposing the increase under U.S.S.G. § 2A3.1(b)(3)(A):

> With the defendant and the victim the only ones in the bathroom, with the fact that the defendant looked upon himself as the grandfather, that close relationship between the defendant and the victim during that instant when the two were in the bathroom together it can be fairly determined that the defendant was asserting. And any care, custody, and control of the mother had been transferred by the child leaving his mother and going into the bathroom. Had the defendant been a stranger, it is arguably unlikely that this incident would have happened. The fact that the defendant took advantage of his knowledge and the child's knowledge of the association between the two indicates to the Court that, indeed, at that time the child was under the care, custody, and control of the defendant, albeit, very temporary. That care, custody, and control was interrupted by the mother

as she came into the room and saw what was happening and took her child out of the presence of the defendant.

See Sentencing Tr. at 18-19.

We conclude that the district court improperly held that the child was within Blue's care. A defendant is in a custodial position for purposes of this section when he "is a person the victim trusts or to whom the victim is entrusted." U.S.S.G. 2A3.1, Comment., Background. The district court's reasoning does not establish custody but only demonstrates proximity. The evidence shows that Blue was in the bathroom, that the child entered the bathroom, and that the two were in the bathroom together for a short time. U.S.S.G. § 2A3.1(b)(3), Application Note 2 provides:

> Subsection (b)(3), as it pertains to a victim in the custody, care, or supervisory control of the defendant, is intended to have broad application and is to be applied whenever the victim is entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the victim and not simply to the legal status of the defendant-victim relationship.

Blue was never entrusted with custody of the child. In United States v. Crane, 965 F.2d 586 (8th Cir. 1992), the Eighth Circuit approved the two-level enhancement where the evidence showed that the defendant had at least temporary custody or care of the victim in circumstances where the victim's mother relinquished custody and control to the defendant before the defendant assaulted the victim. In Crane, the mother testified that she sometimes left the child alone with the defendant (her husband and the victim's stepfather). See also United States v. Voice, 200 F.3d 584, 585 (8th Cir. 2000) (per curiam) (noting defendant is in custodial position when record included testimony by victim's mother that defendant and his companion were supposed to be

babysitting the victim when the abusive contact occurred); United States v. Chasenah, 23 F.3d 337, 338-39 (10th Cir. 1994) (applying two-level enhancement where court found evidence that it was "the practice of the family" that responsibility for supervising the child fell on any adult in the home while the parents were absent coupled with the fact that the victim was taught by her mother to obey those who were "watching" her or who were older than she). Here, in contrast, the government failed to establish that the mother transferred care to Blue.

Moreover, the prosecution did not introduce any evidence that the victim trusted Blue or perceived him as his grandfather. None of the witnesses at the jury trial referred to Blue as the child's grandfather or testified that he had greater access to the victim because of his relationship with the child's grandmother. Cf. United States v. Merritt, 982 F.2d 305, 307 (8th Cir. 1992) (finding enhancement applied when defendant lived with victim's grandmother and consequently was able to be alone with the victim when he abused her, and, additionally, defendant's probation officer testified at the sentencing hearing that defendant had supervisory control over the victim when he picked her up from the home of relatives); United States v. Balfany, 965 F.2d 575, 585 (8th Cir. 1992) (finding enhancement applied when defendant lived with victim's mother in same house as victim, and was left alone with victim to care for him, and testimony at sentencing showed that defendant and victim's mother shared many household responsibilities, including caring for the children at times); United States v. Castro-Romero, 964 F.2d 942, 944 (9th Cir. 1992) (per curiam) (noting defendant is in custodial position when he is trusted by victim, or is person to whom victim is entrusted, and victim was daughter of defendant's common-law wife, defendant was present at victim's birth and helped raise her, victim referred to defendant as "daddy," and defendant lived with the victim and was home alone with her when the second incident of sexual abuse occurred). Here, the government failed to establish that Blue is a person the victim trusted at the time of the incident.

We therefore instruct the district court to resentence without the erroneous application of this two-level enhancement based upon the victim's presence in the defendant's "custody, care, or control."

## III.  CONCLUSION

We affirm Blue's conviction but vacate his sentence, and remand the case to the district court for resentencing without the enhancements of four levels for alleged use of force and an additional two levels for alleged custody, care, or supervisory control of the victim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-